Richard R. Watkinson
ACOMS # 347172
Goose Creek Correctional Center
22301 West Alsop Road
Wasilla, Alaska 99623
PH # 907·864·8100, Opt. 1

RECEIVED

NOV 08 2017

CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RICHARD R. WATKINSON,<br><br>      Plaintiff,<br><br>      vs.<br><br>STATE OF ALASKA, DEPARTMENT<br>OF CORRECTIONS,<br>JOHN CONANT,<br>EARL HAUSER,<br>JAMES DUNCAN,<br>SCOTT DIAL, and<br>KEITH ROGERS,<br><br>      Defendants. | Case No. 3:17-cv-00236-TMB |

## COMPLAINT

### I. JURISDICTION & VENUE

1.    This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. This civil action is also authorized by 42 U.S.C. § 2000cc to redress substantial burdens upon a prisoner's exercise of religion. The court has jurisdiction under 28 U.S.C. § 1331 and 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201 and 2202. Plaintiffs claims for injunctive relief are authorized by 28 U.S.C. § 2283 and 2284 and Rule 65 of the Federal Rules of

Watkinson v. SOA, DOC, et al.,                    **Page 1 of 22**
COMPLAINT

Civil Procedure.

2.    The District of Alaska is an appropriate venue under 28 U.S.C. § 1391(b)(2) as it is where the events giving rise to this claim occured.

## II. PLAINTIFFS

3.    Plaintiff, Richard R. Watkinson, state offender no. 347172 , is and was at all times mentioned herein a prisoner of the State of Alaska in the custody of the Alaska Department of Corrections. He is currently confined to the Goose Creek Correctional Center (hereafter "GCCC") in Wasilla, Alaska.

## III. DEFENDANTS

4.    Defendant, State of Alaska, Department of Corrections, is a state agency charged with the custody and care of the prisoners it confines as authorized by Alaska Statute 33.30.011.

5.    Defendant, John Conant, was the Superintendent of GCC at all times relevant to this complaint and was legally responsible for the operation of the GCCC and for the welfare of all the inmates in that prison.

6.    Defendant, Earl Hauser, is the current Superintentdent of GCCC at all times relevant to this complaint and is legally resonsible for the operation of the GCCC and for the welfare of all the inmates in that prison.

7.    Defendant, James Duncan, is the Chaplaincy Coordinator for the Alaska Department of Corrections who, at all times relevant to this complaint was responsible for the religious programming at the GCCC.

Watkinson v. SOA, DOC, et al.,                Page 2 of 22
COMPLAINT

8.     Defendant, Scott Dial, is a Correctional Officer of the Alaska Department of Corrections who, at all times relevant to this complaint, held the rank of Lieutenant and was assigned to the GCCC.

9.     Defendant, Keith Rogers, is a Correctional Officer of the Alaska Department of Corrections who, at all times relevant to this complaint, held the rank of Sergeant and was assigned to the GCCC.

10.     Each defendant is sued in their individual capacity for purposes of damages and in their official capacity for purposes of declaratory and injunctive relief. At all times mentioned in this complaint each Defendant acted under the color of state law.

11.     The State of Alaska, Department of Corrections, is a state agency that receives federal funding and is therefore subject to the R.L.U.I.P.A. at 42 U.S.C. § 2000cc.

## IV. STATEMENT OF FACTS

12.     The Asatru faith has been a recognized congregate religious practice within the Alaska Department of Corrections since August of 2005.

13.     The Blodtryggr Kindred is a religious entity of the Asatru faith, which has hosted and been largely responsible for the support of the Asatru religious practice since April of 2006. The Blodtryggr Kindred has conducted congregate religious services within the Alaska prison system at four seperate prisons in the last eleven (11) years - including those conducted at the GCCC.

14.     The Blodtryggr Kindred and the Asatru faith group has

never engaged in Security Threat Group (STG) activities or discrimination based upon race or religion and have specific policies against such behavior.

15.     The Blodtryggr Kindred and Asatru faith group have consistently attempted to work positively with staff and the Administration of the GCCC in furtherance of the religious practice of Asatru.

16.     Defendants, individually and/or collectively, have discriminated against and shown bias towards the practice of Asatru within the GCCC.

17.     Defendants, individually and/or collectively, have given privileges and benefits to religious faiths other than Asatru that they have refused or forbidden to Asatru practitioners.

18.     Defendants, individually and/or collectively, have been made aware that other staff of this facility have discriminated and acted against the religious practice of Asatru and have done nothing to correct the discriminatory actions of their staff.

19.     That Defendants, individually and/or collectively, have engaged in a sustained agenda to undermine and suppress the religious prcatice of Asatru at the GCCC, and have failed to prevent other staff they are responsible for from also doing so.

20.     Plaintiff has been personally told by facility staff on multiple occasions that GCCC staff and Administrators believe the Asatru faith group is simply a cover for STG activity. During one such conversation it was stated that, "If you're White, and you attend Asatru, you're in a gang."

Watkinson v. SOA, DOC, et al.,                      Page 4 of 22
COMPLAINT

21.    On October 19, 2015, participants of the Asatru faith group were taken to intake after one of their religious services and subjected to a search and body-scanner by facility staff. No other class or religious group has ever been subjected to this type of treatment at the GCCC.

22.    Until October 23, 2015, unsentenced prisoners were not allowed to attend Asatru religious services, while they were continuously allowed to attend Christian religious services.

23.    In November of 2015, Defendants Dial and Duncan forced several Asatru practitioners to turn in their personal sets of Futhark runes made of stone after banning their possession. These rune-sets had been consecrated and personally attuned to the practitioners who possessed them. In response to grievance GCC15-1205, stone rune-sets were re-approved, however none were returned to the prisoners they were confiscated from.

24.    On November 30, 2015, Defendant Dial denied Plaintiffs request to allow a Poetic Edda into the facility Visitation room. This denial was given despite Christian Bibles being available in the Visitation room for years. Christian Bibles continue to be the only religious text offered in the Visitation room of GCCC.

25.    In December of 2015, Defendants Dial and Duncan refused to allow Asatru practitioners to observe the High Feast of Yule in a manner that made the religious feast acceptable. This was done by minimizing our previously approved religious feat practice to the point that it would have been unworthy of honoring our Ancestors and Gods.

Watkinson v. SOA, DOC, et al.,                    Page 5 of 22
COMPLAINT

26. On January 13, 2016, a number of Asatru pamphlets were confiscated from the Bravo housing unit by facility staff who labeled them as "recruitment materials" for an STG group. Afterwards, Defendant Dial forbid the dissemination of Asatru literature in the housing units, or the sharing of literature not sent directly to an individual prisoner through the mail. This determination was given despite Christian literature always being made available in the housing units and Bibles passed out by volunteers on the prison yard.

27. Since March of 2016, Asatru practitioners have been forced to pay for copies of religious literature while Christian religious literature is freely copied and disseminated through the facility Chapel. Asatru practitioners have also been denied computer usage since that time in support of our religious practice, while Christian adherents continue to enjoy computer usage in support of their religious practice.

28. On March 11, 2016, Defendant Dial denied the use of previously approved outside vendors to provide the foods for our High Feast of Ostara. This was done despite the use of outside vendors being re-affirmed in October of 2015, and resulted in the Asatru faith group, including the Plaintiff, not being able to properly observe our Ostara feast.

29. That due to Defendant's Dial, Duncan, and Rogers constructive obstruction of our religious feasting practice, Plaintiff and Asatru practitioners were unable to observe four (4) High Feasts between December 2015 and September 2016.

Watkinson v. SOA, DOC, et al., Page 6 of 22
COMPLAINT

30.     On March 23, 2016, two Asatru participants were taken by Security staff from Programs to Intake, strip-searched, body-scanned, and had their religious materials confiscated. Two Asatru religious books belonging to the Blodtryggr Kindred, of which Plaintiff is a founding member, were thrown away by Security staff during this incidentand had to be later replaced by the facility.

31.     In April and May of 2016, Asatru practitioners, including Plaintiff, were forced to observe their weekly religious rites without the use of fire due to the facility arbitrarily deciding to no longer provide firewood from the Prisoner Welfare Fund (henceforth "PWF"). Firewood for the Asatru religious services had been provided from the PWF since 2007 at various facilities. On May 13, 2016, in response to grievance and documentation provided by both Asatru and Native-Sweat participants, the facility again chose to supply firewood through the PWF.

32.     On May 2, 2016, Defendants Duncan and Conant denied Asatru practitioners the ability to retain and view the History Channel series, "The Vikings," even while it was being shown on normal television within the facility. "The Vikings," and several other movies have been denied as being 'too violent,' while Christian prisoners continue to retain and view violent Christian movies from the facility Chapel.

33.     On June 11, 2016, Security staff of GCCC staged a mock fire-drill in Bravo module, in an attempt to seize the Blodtryggr Kindred's book of religious rituals. The Kindred's Godhi was told

that this was due to Security staff's belief that the book held evidence of 'gang activity.' Security staff later retaliated against the Blodtryggr Kindred by transferring their Godhi, for his participation with our religious practices and officiation of our religious rites.

34.     In June of 2016 facility staff notified Plaintiff that the digital computer files of the Asatru faith group had been seized due to the belief that they consisted of 'gang activity.' Defendant Conant confirmed in a written response that there were "security concerns" with the content of the Asatru files, which still have yet to be returned to Asatru practitioners.

35.     On July 8, 2016, Security staff called prisoner Nicholas Chamberlain to Intake and proceeded to interrogate him about the Asatru faith group and Blodtryggr Kindred. Mr. Chamberlain had attended Asatru on numerous occasions and was specifically asked if Asatru was a cover for White Supremacists to meet, and whether he was being indoctrinated or forced to attend. Prisoners from no other religion have been subjected to this type of treatment by Security staff.

36.     On July 10, 2016, the Blodtryggr Kindred's 'Skald Folder' containing inventories and check-out lists of the Asatru library was confiscated by Security staff. The folder was kept in evidence, "pending an investigation," by Defendant Dial and not returned to the Asatru faith group until October 28, 2016.

37.     On July 26, 2016, Security staff seized a copy of the Blodtryggr Kindred's Book of Blottar (religious rituals) from the

Watkinson v. SOA, DOC, et al.,                Page 8 of 22
COMPLAINT

facility Mailroom. Staff refused to deliver this mail to Plaintiff for the next three (3) months, and Asatru practitioners were forced to rewrite many of their weekly religious rituals during that time. The mail containing the Kindred's Book of Blottar was not issued to Plaintiff until October 31, 2016.

38.     On September 3, 2016, Plaintiff filed a grievance addressing the consistent discrimination shown by facility staff against the Asatru faith. This grievance, GCC16-922, was received and processed by Defendant Rogers on September 6, 2016.

39.     On September 6, 2016, in retaliation for the above grievance filed, Defendant Conant ordered the complete shutdown of all Asatru services and the seizure of all Asatru faith group property. This order was only rescinded after Defendant Conant's superiors and the Department of Law became involved.

40.     In response to GCC16-922 the Alaska Department of Corrections justified the actions of facility staff by stating that the Blodtryggr Kindred had not been an authorized religious group. This statement was made despite the Alaska DOC being provided copies of the Blodtryggr Kindred's By-Laws and operating guidelines on multiple occasions since 2006, including being provided to GCCC staff as early as August of 2015.

41.     The Blodtryggr Kindred was officially recognized as an approved religious group of the Asatru faith by the Alaska DOC on October 17, 2016. This approval was intended only to placate asatru practitioners and did nothing to stop or discourage continued discrimination by facility staff. Despite this

Watkinson v. SOA, DOC, et al.,                    Page 9 of 22
COMPLAINT

approval, the Blodtryggr Kindred was not available as a faith group affiliation choice until August of 2017.

42.     On December 31, 2016, Security staff of Shift 2 failed to provide the Asatru faith group with enough firewood for their final Yule ceremony despite plenty of wood being available within the perimeter fence. When Plaintiff and other Asatru practitioners attempted to remedy the situation they were responded to with derision and hostility.

43.     On January 9, 2017, Plaintiff filed an allegation of staff misconduct, grievance GCC17-90, against the Security staff involved. The conduct described in the grievance was never addressed and Defendant Rogers used the grievance as an opportunity to retaliate against the Asatru faith group by causing the DOC to no longer provide the firewood for Asatru religious services from the PWF.

44.     The logic proffered by Defendant Rogers regarding Alaska DOC policy 816.01(VII)(A)(5)(f) in GCC17-90 was the exact same argument he used in GCC16-441 which was rejected by DOC administrators at that time. Between May 2016 and February 2017 the firewood for our Asatru religious services was provided by the PWF. Since the decision rendered in GCC17-90 the Alaska DOC has refused to provide the Asatru religious practice with firewood from the PWF.

45.     On February 13, 2017, Plaintiff received notice that Asatru practitioners would not be allowed to cook and prepare our religious feast foods in the facility Kitchen. Plaintiff

filed a grievance, GCC17-191, over this specific denial on February 20, 2017. This grievance was improperly screened by Defendant Rogers as duplicative of GCC16-373, which was filed almost a year earlier in response to the discontinuance of outside vendors.

46.    On March 15, 2017, Security staff of Shift 2 vindictively threw drying firewood kept indoors back out into the snow to render it neraly unusable for the coming weekend Asatru and Native-Sweat religious rites. Both Plaintiff and Native-Sweat practitioners filed grievances as allegations of staff misconduct against the Security staff involved.

47.    Plaintiff filed grievance GCC17-283 on March 20, 2017. Instead of addressing the conduct described in the above paragraph, Defendant Rogers screened the grievance as duplicative of GCC17-90 and Defendant Conant denied the appeal of the screening.

48.    On May 12, 2017, Plaintiff was notified by Defendant Dial that the facility would no longer provide firewood from the PWF for Asatru religious services and confirmed this change was in response to grievance GCC17-90.

49.    On June 11, 2017, Plaintiff filed a grievance to address the substantial burden placed upon Asatru practitioners by the facility refusing to provide firewood through the PWF. This grievance, GCC17-507, was screened as duplicative of GCC17-90. The facility continues to refuse the provision of firewood for Asatru religious services but provides firewood from the PWF for

Watkinson v. SOA, DOC, et al.,                    Page 11 of 22
COMPLAINT

other religious practices.

50.     In retaliation for the filing of GCC17-90 the Asatru faith group was also fully banned from any usage of the facility PWF, which had previously also been utilized to purchase natural juice, religious copies and the food for the Asatru feasts. This prohibition against the Asatru usage of the PWF stands while other secular, cultural and spiritual groups continue to enjoy benefit of the PWF for their activities.

51.     In addition to barring Plaintiff and Asatru pracitioners from utilization of the PWF, Defendant Dial and Hauser also deliberately withheld and misallocated funds donated by Asatru practitioners specifically for the support of their religious practice.

52.     That on May 23, 2017, Plaintiff received notice from Defendant Dial that the cooking of pork in the facility Kitchen would no longer be allowed for Asatru religious meals. The GCCC was declared a 'No-Pork' facility as of June 10, 2017. While the Asatru religion is banned from cooking pork in the facility Kitchen, pork continues to be cooked and prepared by staff for their personal staff meals. Other religions are also given special preference and treatment in the facility Kitchen not afforded to the Asatru religion.

53.     on June 3, 2017, the facility placed all natural juice on the facility commissary as it could no longer be purchased through the PWF by Asatru donations. The product placed on commissary available to Asatru practitioners cost twice the

Watkinson v. SOA, DOC, et al.,                    Page 12 of 22
COMPLAINT

retail value of the same product sold to the general public.

54.     On June 28, 2017, Plaintiff filed a grievance addressing the exorbitant pricing of the all natural juice placed on the facility commissary and the substantial burden it placed upon Asatru practitioners. This grievance, GCC17-579, was screened by Defendant Rogers and the appeal of the screening denied by Defendant Hauser.

55.     Defendant Dial and Defendant Duncan, deliberately or through gross negligence, prevented the observance of the Asatru High Feast of Baldur scheduled for June 26, 2017, and placed a substantial burden upon the Asatru religious practice.

56.     That Plaintiff, as a practitioner of Asatru and member of the Blodtryggr Kindred, was either directly or indirectly a party to the above events as described in ¶¶ 12 through 55 of this complaint. All reference to 'Asatru practitioners' include Plaintiff and directly effected his religious practice at the GCCC.

57.     That due to the events and consistent discrimination described in this complaint, Plaintiff has endured a great amount of persecution, anxiety, frustration and anger in his personal religious practice and has made the practice of Asatru in this facility extremely discouraging and vexatious for himself and others participating in Asatru.

## V. EXHAUSTION OF LEGAL REMEDIES

58.     Plaintiff has utilized the facility grievance system at the Goose Creek Correctional Center to the best of his ability

and has made a good faith effort to diligently address the issues and events described in this complaint.

59.     In regards to the denial of stone Futhark runes as described in ¶ 23 of this complaint, Plaintiff submitted grievance GCC15-1205 on November 22, 2015, which was resolved by facility staff on December 11, 2015.

60.     In regards to the denial of the High Feast of Yule as described in ¶ 25 of this complaint, Plaintiff submitted grievance GCC15-1315 on December 20, 2015, and an appeal of the screening of this grievance was denied in December 30, 2015.

61.     In regards to the denial of utilizing a Poetic Edda in Visitation as described in ¶ 24 of this complaint, Plaintiff submitted grievance GCC16-137 on February 5, 2016, which was partially granted by the Deputy Commissioner on March 10, 2016.

62.     In regards to the denial of the High Feast of Ostara as described in ¶ 28 of this complaint, Plaintiff submitted grievance GCC16-373 on April 3, 2016. The denial of this grievance was upheld by the Deputy Commissioner on August 5, 2016.

63.     In regards to the provision of firewood through the PWF as described in ¶¶ 31, 43, 44, & 49 of this complaint, Plaintiff submitted grievance GCC16-441 on April 25, 2016, and grievance GCC17-507 on June 11, 2017. GCC16-441 was upheld in favor of providing firewood through the PWF by the Deputy Commissioner on August 5, 2016. GCC17-507 was screened and an appeal of the screening was denied by Defendant Hauser on June 15, 2017.

Watkinson v. SOA, DOC, et al.,                    Page 14 of 22
COMPLAINT

64.     In regards to the disposal of two Asatru religious texts as described in ¶ 30 of this complaint, Plaintiff submitted grievance GCC16-509 on May 12, 2016, which was resolved by facility staff on June 14, 2016.

65.     In regards to the denial of "The Vikings" series as described in ¶ 32 of this complaint, Plaintiff submitted grievance GCC16-558 on June 1, 2016, and an appeal of the screening of this grievance was denied by Defendant Conant on June 15, 2016.

66.     In regards to the denial of computer access and seizure of asatru files as described in ¶ 27 & 34 of this complaint, Plaintiff submitted grievance GCC16-732 on July 19, 2016. A response denying the appeal of this grievance by the Director was received September 9, 2016, while no response to the Level 3 appeal of this grievance has been rendered.

67.     In regards to the provision of religious copies as described in ¶ 27 of this complaint, Plaintiff submitted grievance GCC16-888 on August 30, 2016, which was unfairly resolved by Defendant Dial via memo in September of 2016.

68.     In regards to the seizure of the Asatru religious rites as described in ¶ 37 of this complaint, Plaintiff submitted grievance GCC16-826 on August 11, 2016, which was answered by the DOC Standards Administrator on November 22, 2016.

69.     In regards to the consistent discrimination and bias against the Asatru religion by facility staff as described in ¶¶ 20, 21, 26, 30, 33, 35, & 37-39 of this complaint, Plaintiff

submitted grievance GCC16-922 on September 3, 2016, which was answered by the DOC Standards Administrator on November 28, 2016.

70.     In regards to the seizure of the Skald Folder as described in ¶ 36 of this complaint, Plaintiff submitted grievance GCC16-1105 on October 25, 2016, which was resolved by facility staff on October 28, 2016.

71.     In regards to the actions of facility staff as described in ¶¶ 42 & 43 of this complaint, Plaintiff submitted grievance GCC17-90 on January 19, 2017, which was denied and upheld by the DOC Standards Administrator on April 13, 2017.

72.     In regards to the inability for Asatru practitioners to cook their own feast foods as described in ¶ 45 of this complaint, Plaintiff submitted grievance GCC17-191 on February 20, 2017, and an appeal of the screening of this grievance was denied on March 2, 2017.

73.     In regards to the actions of facility staff as described in ¶ 46 of this complaint, Plaintiff submitted grievance GCC17-283 on March 20, 2017, and an appeal of the screening of this grievance was denied on March 28, 2017.

74.     In regards to the banning of Asatru participants from usage of the Prisoner Welfare Fund as described in ¶ 43, 48, & 50 of this complaint, Plaintiff submitted grievance GCC17-537 on June 18, 2017, and did not receive a response from the DOC Standards Administrator until October 23, 2017.

75.     In regards to the forbiddance of the cooking of pork as described in ¶ 52 of this complaint, Plaintiff submitted

grievance GCC17-560 on June 23, 2017, and a response denying the final appeal of the grievance was received from the DOC Standards Administrator on September 5, 2017.

76.     In regards to the exorbitant pricing of natural juice as described in ¶ 53 of this complaint, Plaintiff submitted grievance GCC17-579 on June 28, 2017, and an appeal of the screening of this grievance was denied by Defendant Hauser on July 10, 2017.

77.     In regards to the prevention of allowing Asatru practitioners observance of the High Feast of Baldur as described in ¶ 55 of this complaint, Plaintiff submitted grievance GCC17-656 on July 10, 2017, and submitted a Level 3 appeal of this grievance and received a response from the DOC Standards Administrator on October 4, 2017.

78.     In regards to the withholding of funds donated to the PWF as described in ¶ 51 of this complaint, Plaintiff was a party to the grievance filed per DOC policy 808.03(VII)(E)(1)(b) and 808.03(VII)(A)(2)(d)(3)(d), submitted on August 24, 2017, and an appeal of the screening of this grievance was denied by Defendant Hauser on September 7, 2017.

## VI. CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION

The continued religious discrimination against the religion of Asatru by Defendants and facility staff as described in ¶¶ 16-57 of this complaint has violated Plaintiffs right to be free from discrimination and to practice his religion in a peacable

Watkinson v. SOA, DOC, et al.,                    Page 17 of 22
COMPLAINT

manner as protected by 42 U.S.C. § 1983 and the First and
Fourteenth Amendments to the United States Constitution.
Specifically, but not limited to, the following actions;

79.    By discriminating against the religion of Asatru as found
in ¶¶ 20, 21, 26, 30, 33-37, 39, 42, & 46 of this complaint,

80.    By treating practitioners of the Asatru faith as if they
were members of an STG group based solely upon their race and
religious preference as described in ¶¶ 20, 21, 26, 30, & 33-37
of this complaint,

81.    By retaliating against Plaintiff and Asatru practitioners
for pursuing fair treatment and their religious rights as
described in ¶¶ 39, 43, 44 &  50 of this complaint.

### B. SECOND CAUSE OF ACTION

That the unequal and biased treatment shown to Plaintiff and
Asatru practitioners by Defendants and facility staff as
described in ¶¶ 16-57 of this complaint has violated Plaintiffs
right to equal protection under the law as granted under the
Equal Protections Clause of the Fourteenth Amendment and the
Establishment Clause of the First Amendment to the United States
Constitution. Specifically, but not limited to, the following
actions;

82.    By discriminatory and biased practices that discourage
prisoners from the practice of Asatru while encouraging the
practice of other religions as described in ¶¶ 21, 22, 26, 30, 32
, 33-37, 39, 48, & 50 of this complaint,

83.    By subjecting practitioners of the Asatru faith to

Watkinson v. SOA, DOC, et al.,              Page 18 of 22
COMPLAINT

treatment not leveled at other religious practices as described in ¶¶ 21, 22, 26, 33, 35-37, 39 & 48,

84.    By denying a benefit to Asatru practitioners that is afforded to other prisoners and/or religious practices as described in ¶¶ 22, 24, 26, 27, 32, 34, 41, 48 & 49 of this complaint,

85.    By creating a negative environment that places Asatru practitioners under emotional distress as described in ¶¶ 20, 21, 23, 26, 27-31, 32-37, 39, 42-46, 48, 50, 52, 53, & 55 of this complaint,

### C. THIRD CAUSE OF ACTION

That through the negative and biased treatment of the Asatru religion as described in ¶¶ 16-57 of this complaint, the Alaska Department of Corrections, Defendants, and facility staff have placed a substantial burden upon Plaintiffs religious practice which violates the R.L.U.I.P.A. at 42 U.S.C. § 2000cc. Specifically, but not limited to, the following actions;

86.    By unnecessarily seperating Asatru practitioners from their consecrated religious items as described in ¶ 23 of this complaint,

87.    By preventing Plaintiff and Asatru practitioners from observing several of our religious High Feasts as described in ¶¶ 25, 28, 29, & 55 of this complaint,

88.    By preventing Asatru practitioners from having the ability to cook and prepare their own religious feast foods as described in ¶ 45 of this complaint,

Watkinson v. SOA, DOC, et al.,          Page 19 of 22
COMPLAINT

89.     By preventing Asatru practitioners from having the ability
to cook pork in the facility Kitchen without providing a
compelling governmental interest as described in ¶ 52 of this
complaint,

90.     By preventing Asatru practitioners access and utilization
of the Prisoner Welfare Fund in support of our religious practice
as described in ¶¶ 43, 44, & 48-50 of this complaint,

91.     By forcing Plaintiff and Asatru practitioners to pay
exorbitant prices for all natural juice from the facility
commissary as described in ¶ 53 of this complaint.


92.     Plaintiff realleges and incorporates by reference ¶¶ 1-77
in support of the above causes of action.

93.     Plaintiff has no plain, adequate or complete remedy at law
to redress the wrongs described herein. Plaintiff has been and
will continue to be irreparably injured by the conduct of
Defendants unless the court grants the declaratory and injunctive
relief which Plaintiff seeks.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the court order
and enter judgment granting Plaintiff:

94.     A declaration that the acts and omissions described herein
violated Plaintiffs rights under the Constitution and laws of the
United States.

95.     A preliminary and permanent injunction ordering Defendants
and facility staff to cease all discrimination against the Asatru

religion and practitioners of the Asatru faith.

96.     A preliminary and permanent injunction ordering Defendants
to afford to the Asatru faith the same benefits and privileges
afforded to every other religion within the facility.

97.     A preliminary and permanent injunction ordering Defendants
to no longer deny or deprive Asatru practitioners of a religious
practice without first providing a legitimate compelling
governmental interest.

98.     A preliminary and permanent injunction ordering Defendants
to allow Asatru practitioners to prepare and cook their own
religious feast foods in the facility Kitchen.

99.     A preliminary and permanent injunction ordering Defendants
to allow the cooking of pork in the facility Kitchen for Asatru
religious meals.

100.    A preliminary and permanent injunction ordering Defendants
to allow Asatru practitioners access and utilization of the
Prisoner Welfare Fund in support of their religious practices.

101.    A preliminary and permanent injunction ordering Defendants
to purchase firewood for the Asatru religious services from the
Prisoner Welfare Fund.

102.    A preliminary and permanent injunction ordering Defendants
to afford Asatru practitioners a reasonable opportunity to
provide for their own all natural juice and religious supplies.

103.    Compensatory damages in an amount to be determined through
discovery and trial against each Defendant, jointly and
severally.

Case 3:17-cv-00236-TMB   Document 1   Filed 11/08/17   Page 21 of 23

104.   Punitive damages in the amount of §50,000 against each Defendant found to have discriminated against the Asatru faith or violated Plaintiffs legal rights.

105.   Plaintiffs costs in this suit.

106.   Any additional relief this court may deem just, proper and equitable.

RESPECTFULLY submitted this **1**$^{st}$ day of **November, 2017.**

Richard R. Watkinson #347172

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct. Executed at **Wasilla, Alaska,** on November **1**$^{st}$ , 2017.

Richard R. Watkinson #347172

*PRESS FIRMLY TO SEAL*

11/2/17

11/03/2013 US POSTAGE $06.65

ZIP 99654
041L11229247

LEGAL

**FROM:** Richard Watkinson #347172
Goose Creek Correctional Center
22301 West Alsop Road
Wasilla, Alaska 99623

**TO:**

Clerk of Court
United States District Court
District of Alaska
222 West 7th Avenue, Box 4
Anchorage, Alaska 99513-7564

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.

## VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE


**UNITED STATES POSTAL SERVICE.®**

July 2013
i x 9.5